NOT DESIGNATED FOR PUBLICATION

No. 121,292

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of I.D.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Opinion filed December 13, 2019. Affirmed.

*Jordan E. Kieffer*, of Dugan & Giroux Law, Inc., of Wichita, for appellant natural mother.

*Julia A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before GARDNER, P.J., BUSER, J., and LAHEY, S.J.

PER CURIAM: Mother appeals the district court's termination of her parental rights to her daughter, I.D. She contends there was not clear and convincing evidence in the record to support the district court's finding that she is presently unfit, that she is unfit for the foreseeable future, or that termination is in the child's best interests. Father's parental rights were terminated as well, but he does not appeal. After a careful review of the evidentiary record, we find no error by the district court and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On October 9, 2017, the State filed a child in need of care petition on behalf of newborn child I.D. after I.D. and Mother tested positive for amphetamine and methamphetamine at the time of I.D.'s birth. The same day, the district court placed I.D.

1

in the protective custody of the Kansas Department for Children and Families (DCF). One week later, Mother and Father waived their right to an evidentiary hearing on temporary custody. One month later, Mother and Father submitted a statement of no contest at the adjudication/disposition hearing, and I.D. was found to be a child in need of care. The district court ordered that I.D. remain in DCF custody and adopted a permanency plan, with a goal of reintegration, proposed by St. Francis Community Services (SFCS). Mother and Father were each given multiple case plan tasks. Four months later, the State filed its motion to terminate. At the termination hearing two months later, the district court terminated both Mother's and Father's parental rights.

Although Mother appeals the finding of unfitness and the court's determination that termination was in I.D.'s best interests, the primary focus of her brief is that the district court erred in finding that her condition was unlikely to change in the foreseeable future. She concedes she was using methamphetamine before and after the birth of I.D., failed multiple drug tests, did not complete task plans regarding her substance abuse or mental health issues, did not attend domestic violence classes, and did not finish parenting classes. Mother offered various explanations or excuses for her failure to complete case plan tasks. In her testimony, Mother claimed that she was now sober, had a job and stable residence, was in drug treatment, and would be ready to parent I.D. in a month. She contends that she came to recognize her past mistakes and demonstrated an ability to change by beginning to address her reintegration tasks near the end of the case.

In making its decision, the district court made a credibility determination and found "[Mother] said a lot of things . . . that indicate that maybe she's turned a corner, but the problem is I can't believe most of those things because I don't believe what she was saying is entirely truthful." The district court also found that Mother's "eleventh-hour efforts" were not persuasive in determining whether Mother was likely to change in the foreseeable future. The district court also found that termination of parental rights was in the child's best interests.

Mother timely appeals.

DID CLEAR AND CONVINCING EVIDENCE SUPPORT
TERMINATION OF MOTHER'S PARENTAL RIGHTS?

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the law considers this right to be fundamental. *Santosky*, 455 U.S. at 753. The State may therefore extinguish the legal bonds between parent and child only upon clear and convincing evidence of parental unfitness. K.S.A. 2018 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2018 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute contains a nonexclusive list of nine conditions that singularly or in combination constitute parental unfitness. K.S.A. 2018 Supp. 38-2269(b). The statute lists four other factors to be considered when a parent no longer has physical custody of a child. K.S.A. 2018 Supp. 38-2269(c).

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational fact-finder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. Thus, we resolve any conflicts in evidence to the State's benefit and against Mother.

At the conclusion of the termination hearing, the district court found four statutory factors supported termination of Mother's parental rights. Clear and convincing evidence of even a single statutory factor under K.S.A. 2018 Supp. 38-2269(b) or (c) is sufficient to serve as the basis for finding parental unfitness. K.S.A. 2018 Supp. 38-2269(f). Each factor is analyzed below.

A.     *There is clear and convincing evidence to support the district court's finding that Mother's use of drugs was such as to render her unable to care for the ongoing needs of her child.*

A district court may terminate a parent's rights to his or her child if there is clear and convincing evidence of the "use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child." K.S.A. 2018 Supp. 38-2269(b)(3). Here, clear and convincing evidence supports such a finding.

Mother is a methamphetamine user and has been for more than three years. She admitted in her testimony that she used before and during her pregnancy with I.D., and the evidence shows she continued her use throughout the case. As noted, I.D. tested positive for methamphetamine and amphetamines at birth. Mother claims her doctor told her to continue using methamphetamine while she was pregnant to mitigate the risk of miscarriage. Mother admitted to using methamphetamine for five months after I.D. was placed in DCF custody, and she testified that she kept using methamphetamine after giving birth because she was depressed.

Over the course of this case, Mother completed only 4 of 10 requested urinalysis (UA) tests, and she tested positive for methamphetamine and amphetamine in 2 of the 4 UAs she undertook. She also took two hair follicle tests during the case, with both results positive for methamphetamines. Although she testified her drug use stopped in March

4

2018 when she claims she went to treatment, on May 23, 2018—the day of the termination trial—Mother tested positive for methamphetamine.

Six months after DCF took custody of I.D., and after the deadline in her case achievement plan, Mother finally completed a substance abuse evaluation. The evaluation recommended inpatient treatment, and a bed was reserved for Mother at a treatment facility. However, Mother never showed up for the treatment. SFCS never saw Mother's substance abuse evaluation because she failed to sign the required waiver so SFCS could obtain a copy.

A SFCS caseworker testified both Mother and Father were falling asleep and appeared to be under the influence during a visit with I.D. six days before the termination hearing. However, Mother claimed that she has not "knowingly" used methamphetamine since going through detox in March 2018. After she tested positive on the day of the termination hearing, Mother alleged that she must have tested positive because that morning she unknowingly "picked up a [] spoon off the table to eat pudding" and that spoon had methamphetamine on it. According to Mother, Father continued to use drugs, and the spoon was presumably his. Yet, she continued to live with Father even though she knew he was still using drugs.

Although Mother claimed she sought treatment and had not used methamphetamine since she left detox, the district court found these claims not credible. As mentioned, we cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. *In re B.D.-Y.*, 286 Kan. at 705. There was clear and convincing evidence that Mother failed to address her methamphetamine use during the case, rendering Mother unable to care for the ongoing physical, mental, or emotional needs of I.D.

B.      *There was clear and convincing evidence to support the district court's finding that reasonable efforts made to rehabilitate the family failed.*

Parental rights may be terminated when there is clear and convincing evidence that reasonable efforts made by the State to rehabilitate the family have failed. K.S.A. 2018 Supp. 38-2269(b)(7).

Here, the district court ordered Mother to complete various tasks which Mother either delayed in completing or ignored altogether. The plan addressed drug use, mental health, housing, employment, parenting classes, domestic violence, and counseling needs. SFCS made referrals for Mother to obtain a drug and alcohol evaluation and a mental health clinical assessment. Mother missed, canceled, or postponed those evaluations multiple times. To her credit, she ultimately obtained both required assessments, but she did not follow the recommendations of either. SFCS's multiple efforts to get Mother to submit to drug testing, enter drug treatment, complete parenting and domestic violence classes, and obtain employment were simply not successful.  In every area of the case plan, notwithstanding the requests and efforts made by SFCS to rehabilitate the family, Mother did not follow through. Clear and convincing evidence supports the district court finding.

C.      *There is clear and convincing evidence to support the district court's finding that Mother failed to adjust her circumstances, conduct, or conditions to meet the needs of her child.*

The failure of a parent to adjust his or her circumstances, conduct, or conditions to meet the needs of a child is grounds for termination of parental rights. K.S.A. 2018 Supp. 38-2269(b)(8). Mother's last-minute efforts to adjust to her circumstances were unpersuasive to the district court, and clear and convincing evidence supports this conclusion.

Mother's drug use appears to be the controlling component of her life, and she simply did not take the appropriate or recommended steps to address her drug use. Mother's mental health issues required medication management and counseling, yet she did not engage in either.

Apart from Mother's drug use, the evidence showed that Mother continued to have negative interactions with law enforcement. The State presented evidence that Mother was on probation for a domestic battery conviction. Mother did not comply with the terms of her probation, and a probation violation hearing was pending. Mother was arrested in May 2018 for possession of stolen property. Mother testified that she went to jail because there was a warrant for her arrest after she failed to appear for court.

Even though she ultimately obtained the drug and mental health assessments near the end of the case, Mother did not seek the treatment and counseling recommended to her. She failed to maintain suitable safe housing and was living in a storage unit at one point. Though she testified that Father was going to move out, he was still in the residence and still using drugs as of the time of the termination hearing. Mother did not obtain employment or demonstrate any way she could support I.D. financially. She did claim to have obtained employment just three days before the termination hearing but could not provide concrete information on her pay, hours, or even her employer's last name. These examples show that while Mother put in some eleventh-hour efforts to adjust her circumstances, clear and convincing evidence shows that these efforts were not enough for Mother to adjust adequately her circumstances to meet the needs of I.D.

D.    *There is clear and convincing evidence to support the district court's finding that Mother failed to carry out a reasonable plan directed toward integrating the child into the parental home.*

A district court may terminate a parent's rights to his or her child if the child is not in the custody of the parent and there is clear and convincing evidence that the parent failed to carry out a reasonable plan directed toward reintegration. K.S.A. 2018 Supp. 38-2269(c)(3). Here, Mother displayed a lack of effort to complete the majority of reintegration tasks. Mother only submitted 4 of 10 requested UAs and only submitted 2 hair follicle tests. Mother completed the substance abuse evaluation but failed to follow recommendations. Mother attended only one of eight required parenting classes. Mother completed a clinical assessment but did not regularly attend the recommended counseling nor did she engage in the recommended medication management. Mother did not obtain suitable housing where she could safely parent I.D. She was evicted from her home, lived in a storage unit, or lived with friends throughout the majority of the case. She did obtain a suitable home in April 2018, but, as she testified, Father still lived there and continued to use drugs. According to her testimony, methamphetamine was present in the house on the day of the trial, though she contended she was unaware of it until she accidentally consumed it. Mother did not complete domestic violence classes or participate in couples counseling as required by the case plan. And, as previously mentioned, Mother did not obtain or maintain full-time employment until three days before the termination hearing.

In sum, based on a review of the full evidentiary record considered in a light favoring the State, a rational fact-finder could determine to a high probability that Mother was unfit to parent I.D. at the time of the termination hearing based on the four statutory factors the district court identified.

E.      *Evidence supports the district court's finding that Mother's conduct or condition was unlikely to change in the foreseeable future.*

Having found unfitness, a district court must also determine whether the conduct or condition is unlikely to change in the foreseeable future. K.S.A. 2018 Supp. 38-2269(a).

"When assessing the foreseeable future, this court uses 'child time' as a measure. The Revised Kansas Code for Care of Children—K.S.A. 2018 Supp. 38-2201 et seq.—recognizes that children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that different perception typically points toward a prompt, permanent disposition. K.S.A. 2018 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ('"child time"' differs from '"adult time"' in care proceedings 'in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's')." *In re M.S.*, 56 Kan. App. 2d 1247, 1263-64, 447 P.3d 994 (2019).

Here, there is support for the district court's determination that Mother's unfitness was unlikely to change in the foreseeable future. Mother argues that she recognized her past mistakes and demonstrated her ability to change when she began completing court orders and reintegration tasks towards the end of the case. Mother argues that her case is a "far cry" from other cases because of the short time frame that this case progressed. Mother argues, "Progress made three months from termination in a short case is not the same 'Hail Mary' that it may otherwise be in a longer-term case. Here, the case progressed from inception to termination in seven short months."

Although this case progressed quickly, the record shows that the issues that were present in Mother's life at the beginning of the case were still present at the termination hearing. There was no meaningful progress by Mother on any of the case plan tasks.

Apart from I.D., Mother has had six other children. All six children were removed from her care before I.D. was born, two of whom were adopted by a woman close to Mother. Mother testified that five cases were opened in Oklahoma regarding her children. Two children were removed from Mother's care in Iowa. Mother does not have custody of any of the other children.

Although Mother had completed some tasks and alleged she maintained her sobriety, the district court labeled these efforts as "eleventh-hour" and did not believe they made a difference in Mother's future ability to address her issues long-term. The district court found, "[E]leventh-hour efforts, they do not tell if someone . . . changed and is fit now and is likely to change in the foreseeable future. Eleventh-hour efforts by parents in order to keep these—these matters from going to hearing don't mean much." And despite her arguments about recognizing her past mistakes and changing her ways, the facts show that Mother was falling asleep at her visitation with I.D. a week before the termination hearing and she tested positive for methamphetamine the morning of the hearing.

Additionally, "child time" is a predominant factor here because I.D. is a young child. I.D. has been in custody her entire life. According to the SFCS permanency specialist, parents need to comply with a case plan for six to nine months before it would be appropriate to look at reintegration. If that timeline is accurate, I.D. could be more than two years old before reintegration could even be a possibility. The permanency specialist testified, "I.D. needs a home that can provide for her 24/7 emotionally, physically, mentally, in any way possible." As stated by the district court, "[W]e need to make sure this child gets permanency, sooner rather than later, given the behavior of Mom, as well as [Father]."

10

F.    *The district court did not abuse its discretion in finding that termination of Mother's parental rights was in the best interests of I.D.*

Having found unfitness, the district court must then decide whether termination of parental rights is "in the best interests of the child [giving] primary consideration to the physical, mental and emotional health of the child." K.S.A. 2018 Supp. 38-2269(g)(1). The district court makes that decision based on a preponderance of the evidence. This decision is within the sound discretion of the district court, and an appellate court reviews this decision for an abuse of discretion. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representation, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 571 U.S. 826 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

Because there are no shortcomings in the district court's assessment of the evidence or applicable legal principles, the question then becomes whether no reasonable district court would come to the same conclusion. Here, as stated, the evidence shows Mother could not provide stability for I.D. because she could not maintain employment or provide adequate housing, and she continued to struggle with her addiction to methamphetamine and her mental health issues. This evidence, combined with the evidence discussed throughout this opinion, supports the conclusion that other district courts could come to the same conclusion. We find the district court acted within the evidence and the law in terminating Mother's parental rights to I.D. and that termination is in the child's best interests.

Affirmed.

11